IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JESUS A MORENO,

       Plaintiff,

  v.

IVAN CLAY, Acting Warden,

       Defendant.
_____/

No. C 07-00356 CW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On January 18, 2007, Petitioner Jesus A. Moreno, a state prisoner incarcerated at Pleasant Valley State Prison, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a conviction and sentence imposed by the Contra Costa County superior court. On August 16, 2007, Respondent Acting Warden Ivan Clay filed an answer. Petitioner has not filed a traverse despite being granted an extension of time to do so. Having considered all of the papers filed by the parties, the Court DENIES the petition.

PROCEDURAL HISTORY

Following a jury trial, Petitioner was convicted on July 9, 2004 of attempted second degree murder with an enhancement for the use of a deadly weapon, assault with a deadly weapon upon a peace officer and second degree residential burglary. (Pet'r Ex. A, Sept. 14, 2005 California Court of Appeal Order at 1.) On August 12, 2004, the trial court sentenced Petitioner to an aggregate term of twenty-three years to life. (Id.)

On September 14, 2005, in an unpublished opinion, the California court of appeal reversed Petitioner's assault conviction and otherwise affirmed. (Id.) On October 3, 2005, the court of appeal denied Petitioner's petition for rehearing. (Resp't Ex. H, Oct. 3, 2005 California Court of Appeal Order at 1.) On December 21, 2005, the California Supreme Court denied review. (Resp't Ex. I, Dec. 21, 2005 California Supreme Court Order at 1.)

Petitioner's timely federal habeas corpus petition raises four claims: (1) that the trial court erred in precluding defense testimony; (2) that the trial court erred in instructing the jury on Petitioner's intent; (3) that the trial court failed to give the jury necessary reasonable doubt and burden of proof instructions; and (4) cumulative error.

## STATEMENT OF FACTS

The California court of appeal summarized the factual background as follows:

> In his opening statement defendant's counsel told the jury that defendant did not contest the burglary or the assault charges against him. Defendant did contest the attempted murder charge on the ground that he lacked the requisite intent. Much of the evidence introduced at trial may therefore be abbreviated into the following summary:
>
> In the early morning of April 11, 2003, defendant broke into the Downer School in San Pablo. He ransacked a classroom and took some school supplies. Defendant's entry apparently triggered a silent alarm, and Cris Grunseth, an officer with the West Contra Costa Unified School District, was dispatched to investigate. Grunseth discovered defendant hiding behind a filing cabinet in the classroom. Grunseth told him he was under arrest for burglary. He placed a handcuff on only one of defendant's wrists, because, he testified: "I cuffed his right hand, and . . . I tried to cuff his left. He was complaining that his arm was hurting him and it was stiff, and he was a big person. So I--

2

> because he wasn't giving me any grief, I said, Okay, fine, . . . I will just hold on to the cuff and we will walk out to my car." "I still had my gun on him."
>
> At his car, Officer Grunseth moved the gun from his right hand to the left, in order to get his car keys with his right hand; his left hand was now holding the weapon and the single handcuff on defendant. It was at this point that defendant "grabbed [the officer's] gun handle" and "got into a wrestling match" with the officer for control of the gun. Defendant struck Grunseth a number of times with his fist, driving the officer to his knees. Defendant then produced a knife and began stabbing Grunseth. Finally breaking free of the bleeding Grunseth, defendant fled.
>
> San Pablo police were summoned, and Grunseth provided a description of the suspect. The officers described Grunseth as "completely soaked in blood." Grunseth was taken to the hospital, where he was treated for 10 stab wounds on his back, chest, knuckle, and one "by my eye." Grunseth also suffered a collapsed lung and was in the hospital for four days. Fingerprints recovered from the scene led to discovery of defendant's identity and his subsequent arrest.
>
> Defendant did not testify. Lori Clendenin testified that at the time of the incident she was defendant's girlfriend and living with him. For several weeks before April 10, defendant had been smoking methamphetamine. He was doing so on the night of the 10th, and Clendenin thought he was "a little more hyper than normal. . . ."
>
> Douglas Tucker, M.D., testified as an expert on the effects of methamphetamine use. He explained for the jury how the euphoria of continuous methamphetamine usage can easily go from euphoria to paranoia. It can also lead to "impulsivity," which Dr. Tucker described as actions taken "without adequate reflection or consideration." Methamphetamine "impairs judgment" and the ability to make reasoned decisions, including the consequences of specific actions.

(Pet'r Ex. A at 2-3.)

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal writ of habeas corpus may not be granted with

3

respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant relief if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." William v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant state court decision. Id. at 412.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

In determining whether the state court's decision is contrary

4

to, or involved the unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. Lajoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Respondent concedes that Petitioner has exhausted his state remedies by raising his claims on petition for review in the California Supreme Court. Because the Supreme Court issued a summary opinion which does not explain the rationale of its decision, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California court of appeal.

## DISCUSSION

I.   Preclusion of Expert Witness Testimony

Petitioner argues that the trial court denied him due process by precluding defense counsel from asking the defense psychiatric expert Dr. Douglas Tucker any fact-specific hypothetical questions.

A state court's evidentiary ruling is not subject to federal habeas review unless it violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).

"State and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted); Montana v. Egelhoff, 518 U.S.

5

1  37, 42 (1996) (holding that due process does not guarantee a
2  defendant the right to present all relevant evidence).  This
3  latitude is limited, however, by a defendant's constitutional
4  rights to due process and to present a defense, rights originating
5  in the Sixth and Fourteenth Amendments.  <u>Holmes</u>, 547 U.S. at 324.
6  The exclusion of evidence does not violate the Due Process Clause
7  unless the defendant proves that "it offends some principle of
8  justice so rooted in the traditions and conscience of our people as
9  to be ranked as fundamental."  <u>Egelhoff</u>, 518 U.S. at 42, 47.
10      In deciding if the exclusion of evidence violates the due
11 process right to a fair trial or the right to present a defense,
12 the court balances the following five factors: (1) the probative
13 value of the excluded evidence on the central issue; (2) its
14 reliability; (3) whether it is capable of evaluation by the trier
15 of fact; (4) whether it is the sole evidence on the issue or merely
16 cumulative; and (5) whether it constitutes a major part of the
17 attempted defense.  <u>Chia v. Cambra</u>, 360 F.3d 997, 1004 (9th Cir.
18 2004); <u>Drayden v. White</u>, 232 F.3d 704, 711 (9th Cir. 2000).  The
19 court must also give due weight to the state interests underlying
20 the state evidentiary rules on which the exclusion was based.
21 <u>Chia</u>, 360 F.3d at 1006; <u>Miller v. Stagner</u>, 757 F.2d 988, 995 (9th
22 Cir. 1985).
23      The appellate court upheld the ruling of the trial court
24 precluding Dr. Tucker's response to defense counsel's fact-specific
25 hypothetical.  The trial court had conducted a hearing pursuant to
26 California Evidence Code Section 402 to determine what testimony
27 the jury would hear from Dr. Tucker. (Pet'r Ex. A at 3.)  At the
28

6

**United States District Court**
For the Northern District of California

hearing, Dr. Tucker offered testimony as an expert in forensic psychiatry on the effects of methamphetamine usage.  (Id.)  Defense counsel gave the following hypothetical fact pattern to Dr. Tucker:

> I would like to ask you to just think about the following fact pattern.
>
> Assume that a man in his early 20s with a history of methamphetamine use ingests some portion of one gram of methamphetamine by means of smoking some time late in the evening of -- call it April 10th.
>
> Assume that sometime around 2:00 a.m. this man enters the classroom, portable classroom in order to find some items to steal.
>
> Further assume this man is caught by a school police officer.
>
> Assume that the man tries to hide, but is seen.  And the officer begins the process of taking him into custody.
>
> Assume that the man is handcuffed by one hand and escorted out of the classroom by the officer and that the -- throughout the entire encounter, the officer has his gun, service weapon drawn.
>
> Assume further that the officer makes known to this man that he is a police officer, that he is making an arrest, and that he does have his gun drawn.
>
> Assume that as they arrive outside of the classroom at the officer's patrol vehicle, the officer moves his firearm from his free hand into the same hand in which he is holding onto the other end of the handcuff that is attached to the man.
>
> Assume that there are some moments of confusion, the officer is fumbling for the keys, trying to get the door open, and that this man reaches out toward the officer's hand, the one where he has the gun and the cuff, and the struggle begins.

(Resp't Ex. C, July 6, 2004 Superior Court Reporter's Transcript (RT) at 618-619.)

Based on this hypothetical fact pattern indistinguishable from

7

the case before the court, defense counsel posed the question: "Do you have an opinion as to how the man having ingested methamphetamine would affect his reaction to that set of facts?" (Id. at 619.)  Dr. Tucker responded: "What you are describing sounds like a situation where maybe an impulsive decision to act, to grab the cop or wrestle or escape or make your move, would be something that methamphetamine could certainly influence."  (Id. at 620.)  Defense counsel then asked: "Do you have an opinion as to how that set of facts would affect the person who had ingested methamphetamine, that person's ability to weigh options and make choices?"  (Id. at 621.)  Dr. Tucker replied: "Methamphetamine intoxication definitely reduces the ability to weigh options and make choices.  In fact, poor judgment is one of the diagnostic criteria for making the diagnosis of methamphetamine intoxication."  (Id.)

On cross-examination at the § 402 hearing, the prosecutor questioned Dr. Tucker on the hypothetical, asking: "You said that under the fact pattern given that maybe that person was -- maybe the decision to act was impulsive.  How confident are you . . . by this 'maybe?'"  (Id. at 629.)  Dr. Tucker answered: "[N]ot very confident at all.  I have not interviewed the defendant.  I have not read much in the way of records on this case or learned much about it other than the very brief information that I reviewed, as I mentioned, and what I was given in the hypothetical."  (Id.)  The trial court did not allow defense counsel to elicit Dr. Tucker's answer to the fact-specific hypothetical at trial.  Dr. Tucker was allowed to testify as to the general effects of methamphetamine.

8

In upholding the ruling of the trial court, the appellate court explained that Dr. Tucker was correctly prevented from offering an opinion about whether Petitioner possessed the mental state for the crime and that the hypothetical so mirrored the facts of the crime that it would have conveyed the message that Dr. Tucker was testifying about Petitioner's mental state.

> [T]he effect of the hypothetical question defendant intended to pose to Dr. Tucker--whether a person using methamphetamine would react with a "fight or flight" response when apprehended under the specific facts of the current case--so mirrored the current case that it in essence would have conveyed the message that Dr. Tucker was testifying about this defendant's mental state. . . .  Additionally, as the trial court noted, there were gaps in the underlying foundation of Dr. Tucker's proposed testimony: he did not know how much methamphetamine defendant consumed or the effects on this individual defendant due to his particular sensitivity to the drug and history of abuse. . . .
>
> The court's ruling did not entirely foreclose testimony from Dr. Tucker; the court ruled he could testify about the general effects of methamphetamine and that methamphetamine use could increase impulsivity, and Dr. Tucker did so testify.

(Pet'r Ex. A at 7.)

The appellant court's application of state evidentiary rules in affirming the exclusion of some of Dr. Tucker's testimony did not offend any fundamental principle of justice or deprive Petitioner of a fair trial. Under California law, an expert cannot testify whether the defendant has the required mental state to commit the crimes charged. Cal. Penal Code § 29. As noted by the trial and appellate courts, defense counsel's hypothetical was so similar to the facts of the case that its effect would have been to convey to the jury that Dr. Tucker was giving an opinion on Petitioner's state of mind at the time of the offense. California

9

has broad latitude to exclude evidence from criminal trials. Like California law, the federal rules of evidence prevent expert testimony as to whether a defendant had the mental state constituting an element of the crime. Fed. R. Evid. 704(b). Thus, the exclusion of Dr. Tucker's testimony did not violate federal law, nor deprive Petitioner of a fundamentally fair trial guaranteed by due process.

Even if Dr. Tucker's answer to the hypothetical had been admissible, its exclusion was not unreasonable. Under the Chia balancing factors, the probative value and reliability of the testimony was not great because there was no evidence of how much methamphetamine Petitioner ingested, individual reactions to the drug vary widely and Dr. Tucker had no personal knowledge of Petitioner's medical history nor how he would react to methamphetamine. (Resp't Ex. C at 702-708.) Dr. Tucker's answer to the hypothetical would not have been a major part of Petitioner's defense because he expressly indicated that he could not determine Petitioner's intent, but could only speculate that Petitioner may have been impulsive. (Id. at 634.) Furthermore, Dr. Tucker was allowed to testify as to the general effects of methamphetamine.

Thus, the exclusion of Dr. Tucker's testimony on defense counsel's hypothetical was not a violation of Petitioner's constitutional rights. The appellate court's decision was not contrary to nor an unreasonable application of federal law.

II.  Erroneous Jury Instructions

Petitioner argues that his due process rights were violated

10

when the trial court (a) instructed the jury that attempted voluntary manslaughter could be premised on the theory of conscious disregard for life and (b) failed on its own motion to instruct the jury that it must acquit Petitioner of attempted murder if it had a reasonable doubt whether the offense was murder or manslaughter and that it was the government's burden to prove beyond a reasonable doubt that Petitioner did not act in a sudden quarrel or heat of passion.

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.") (quoting Cupp, 414 U.S. at 146). The instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). In other words, the district court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire process. United States v. Frady, 456 U.S. 152, 169 (1982).

It is well established that a criminal defendant is entitled

11

to adequate instructions on the defense theory of the case. <u>Conde v. Henry</u>, 198 F.3d 734, 739 (9th Cir. 2000). Failure to instruct on the theory of defense violates due process if "'the theory is legally sound and evidence in the case makes it applicable.'" <u>Clark v. Brown</u>, 450 F.3d 898, 904-05 (9th Cir.2006) (quoting <u>Beardslee v. Woodford</u>, 358 F.3d 560, 577 (9th Cir. 2004)). However, the defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory, <u>United States v. Del Muro</u>, 87 F.3d 1078, 1081 (9th Cir. 1996); <u>United States v. Tsinnijinnie</u>, 601 F.2d 1035, 1040 (9th Cir. 1979), nor to an instruction embodying the defense theory if the evidence does not support it, <u>Menendez v. Terhune</u>, 422 F.3d 1012, 1029 (9th Cir. 2005).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. <u>Walker v. Endell</u>, 850 F.2d 470, 475-76 (9th Cir. 1988). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 624 (9th Cir. 1997) (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977)). The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 971 (9th Cir. 2001).

A determination that there is a reasonable likelihood that the jury has applied the challenged instructions in a way that violates the Constitution establishes only that a constitutional error has occurred. <u>Calderon v. Coleman</u>, 525 U.S. 141, 146 (1998). If constitutional error is found, the court must also determine that

12

the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief. Id. (citing Brecht, 507 U.S. at 637).

A. Attempted Voluntary Manslaughter Jury Instruction

Petitioner argues that the trial court erred by instructing the jurors that attempted voluntary manslaughter could be premised on conscious disregard for life and by failing to answer the jury's related question whether a person can attempt to kill without an intent to kill.

Under California law, a person can commit voluntary manslaughter either with an intent to kill or with a conscious disregard for life. People v. Lasko, 23 Cal. 4th 101, 110 (2000). However, attempted voluntary manslaughter cannot rest on a theory of conscious disregard for life and it is an error to so instruct. People v. Gutierrez, 112 Cal. App. 4th 704, 710 (2003); People v. Montes, 112 Cal. App. 4th 1543, 1546-1547 (2003).

Respondent admits that the trial court erroneously instructed the jury on conscious disregard for life in connection with the charge of attempted voluntary manslaughter. The court improperly gave the jury instructions for voluntary manslaughter rather than attempted voluntary manslaughter. (Resp't Ex. C at 734; CALJIC No. 8.40.) However, the appellate court reasonably found that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. The court found that the error favored Petitioner because it gave the jury the option of convicting him of the lesser offense of attempted voluntary manslaughter if it found that he had acted with only a conscious

13

disregard for life.  This is a less culpable state of mind than the malice required for conviction of attempted murder. Nonetheless, the jury found that Petitioner had acted with malice and was therefore guilty of murder.

Petitioner argues that the erroneous definition of intent required for voluntary manslaughter carried over prejudicially into the jury's consideration of attempted murder.  Petitioner argues that confusion was evidenced in the jury's question, "Could you please explain the definition of attempt to kill versus intent to kill?"  (Resp't Ex. B, July 13, 2004 Clerk's Transcript at 474.) The trial court did not answer the question, but instead asked, "By using the phrase 'attempt to kill' are you referring to the crime of attempted murder?"  (Id.)  The jury did not respond further and thus, the trial court never explicitly answered the original question.

The jury was explicitly instructed that it needed to find "express malice aforethought, namely, a specific intent to kill" to convict Petitioner of attempted murder.  (Resp't Ex. C at 725; CALJIC No. 8.66.)  Thus, if the jury thought Petitioner had acted only out of conscious disregard for human life, it would have found him guilty of attempted voluntary manslaughter, not attempted murder.  Because the jury convicted Petitioner of attempted murder, it must have found that he had the intent to kill.  Given that the jury did not respond to the trial court's request for clarification of its question, it must have resolved it for itself.  Because the erroneous jury instruction on attempted voluntary manslaughter had no substantial and injurious effect or influence in determining the

14

jury's verdict, the appellate court's rejection of Petitioner's challenge was not contrary to or an unreasonable application of federal law.

B.  Reasonable Doubt and Burden of Proof Instructions

Petitioner argues that the appellate court unreasonably found that the trial court had no duty on its own motion to instruct the jury (1) that if the jury had a reasonable doubt whether Petitioner committed attempted murder or attempted voluntary manslaughter, it had to choose the latter verdict and (2) that the government had the burden of proving Petitioner was not motivated by a sudden quarrel or heat of passion.

(1)  Reasonable Doubt as to Attempted Murder and Attempted Manslaughter

Petitioner argues that the trial court should have instructed the jury on its own motion with CALJIC No. 8.72 which requires that if the jury had any reasonable doubt between attempted murder and attempted voluntary manslaughter, it should find attempted voluntary manslaughter.

However, as noted by the appellant court, pursuant to CALJIC No. 17.10, the jury was told: "If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may nevertheless convict him of any lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime.  [¶]  The crime of attempted voluntary manslaughter . . . [is] the lesser to that of attempted murder. . . ."  (Resp't Ex. C at 732; CALJIC No. 17.10.)  This provides the same information as CALJIC No. 8.72.  The appellate

15

1 court's rejection of Petitioner's challenge was not contrary to or
2 an unreasonable application of federal law. Petitioner suffered no
3 due process violation from the court's failure to instruct the jury
4 with CALJIC No. 8.72.

     (2)  Heat of Passion Instruction

Petitioner contends that the trial court should have instructed the jury on its own motion with CALJIC No. 8.50 that the prosecution bore the burden of proving that Petitioner did not act upon a sudden quarrel or heat of passion. Under California law, in a murder case, it is the defendant's obligation to proffer some evidence that the murder was due to a sudden quarrel or heat of passion unless the government's evidence suggests that the killing may have been provoked. See People v. Rios, 23 Cal. 4th 450, 461-462 (2000).

The appellate court held that there was no evidence of a sudden quarrel or heat of passion, it was not argued as a theory at trial and thus there was no need for the trial court to instruct with CALJIC 8.50. (Pet'r Ex. A at 11.) There is no evidence in the record suggesting Petitioner's knife attack on Officer Grunseth was provoked. In fact, the evidence suggests that after he arrested Petitioner, Officer Grunseth was unusually lenient because he responded to Petitioner's complaint about arm pain and handcuffed only one of Petitioner's wrists. Federal law does not entitle Petitioner to an unrequested instruction the evidence does not support.

III. Cumulative Error

Petitioner argues that the cumulative effect of the errors

16

discussed above deprived him of due process and a fair trial.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. Alcala v. Woodford, 334 F.3d 862, 893 (9th Cir. 2003). Where no single constitutional error exists, nothing can accumulate to the level of a constitutional violation. Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

Here, only the jury instruction that attempted voluntary manslaughter could be predicated on conscious disregard for life was in error. However, the appellate court reasonably held that this error did not have a substantial and injurious effect or influence in determining the jury's verdict because the jury convicted Petitioner of the more serious offense of attempted murder. Thus, there was no cumulative error and the appellate court's decision was neither contrary to nor an unreasonable application of federal law.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 12/2/08

CLAUDIA WILKEN
United States District Judge

17

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JESUS A MORENO,

        Plaintiff,

  v.

I D CLAY et al,

        Defendant.

Case Number: CV07-00356 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 2, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

David M. Baskind
State Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Jesus A. Moreno V-47127
Pleasant Valley State Prison
24863 W. Jayne Avenue
P.O. Box 8503
Coalinga, CA 93210

Dated: December 2, 2008

        Richard W. Wieking, Clerk
        By: Sheilah Cahill, Deputy Clerk